## HEIDENHEIMER BROS. V. J. BLUMENKRON ET AL.

### (Case No. 783.)

1. PROMISSORY NOTE — INDORSER — PAROL EVIDENCE.— A promissory note was executed and indorsed as follows:

   "$1,418.24.                                GALVESTON, June 1, 1873.

   "Six months after date I promise to pay to the order of myself fourteen hundred and eighteen 24-100 dollars, value received, payable at ———.

       (Signed)                                "J. BLUMENKRON.

       "Indorsed:

         "J. BLUMENKRON,

         "HERMAN HIRSCH,

         "S. HEIDENHEIMER."

   The note was made for a debt from Blumenkron to appellant, a firm of which S. Heidenheimer was a member, and indorsed by the maker, and Hirsch, and S. Heidenheimer to secure an extension. *Held,*

   (1) On the face of the note as indorsed and delivered, Blumenkron was maker, and Hirsch and S. Heidenheimer were indorsers.

   (2) The fact that Hirsch became a party to the note in its inception and for the accommodation of Blumenkron did not make him liable otherwise than as indorser; nor is parol evidence admissible to show the intention with which he signed.

   (3) One who by regular indorsement becomes a party to commercial paper for accommodation, though done when the paper is made and before delivery, occupies a different position from strangers to the paper who write their names thereon.

   (4) Parol evidence is inadmissible to show that the indorser released the owner of the note from obligation to use due diligence to enforce its collection, and a parol contemporaneous waiver of the right to notice cannot, under the statutes of Texas, be shown.

2. EXEMPTION OF HOUSEHOLD FURNITURE FROM FORCED SALE.— The exemption of household and kitchen furniture from forced sale does not include any other than furniture for the family, and will not include beyond this furniture used in hotels and restaurants.

ERROR from Galveston. Tried below before the Hon. Wm. H. Stewart.

The opinion states the case.

*Mills & Tevis,* for plaintiffs in error.

I. The charge assumes Hirsch and S. Heidenheimer

were mere indorsers, because the note was payable to the order of the maker.   We think this rule may obtain in other states, as in Massachusetts and in the late New York cases (13 Gray, 309, 310) parol evidence will not be received to vary their liability.   13 Gray, 403.   The case in 22 Howard, 349, does not recognize the late cases decided in those states.   We do not think the form of the note, of itself, fixes the liability of those who place their names on its back in its incipiency, and before delivery to the creditor; we think it depends on the intention of the parties at the time, as shown by the evidence; and such is the rule in this state.   9 Tex., 615, 619; 14 Tex., 275; 37 Tex., 23.   Story on Notes (sec. 480) fully supports the Texas cases as to the intention of the parties and the surrounding circumstances, as shown by the proof.   The same view is given in 2 Parsons on Bills, 121, who says that the rule of intention prevails in most of the states, but not in Massachusetts and New York.   9 Cal., 402, and 6 Grattan, 633, announce the general rule, and is broad enough to cover the view taken by our supreme court. The older New York cases show that one not a party to a note, placing his name on its back at its incipiency to give it credit, may be held as a guarantor.   Nelson v. Dubois, 13 Johns., 175; Campbell v. Beitler, 14 Johns., 349.   So, too, in Illinois.   Webster v. Cobb, 17 Ill., 459; 21 Ill., 636; 43 Ill., 40; 41 Ill., 409; 3 Cent. L. J., 808.

There is a class of cases like the following: If the note was not made for the benefit of the payee, but some subsequent party to the note, and the payee's indorsement was obtained to give the paper credit with some subsequent party thereto, then the blank indorsement by the stranger to the note before delivery is treated as a second indorser; but if the note is designed for the payee and for his benefit with the creditor, then the stranger is held as guarantor.   Greenough v. Smead, 3 Ohio St., 415.

The implied agreement of guaranty, as in the Texas

cases, is recognized also in Nevada and Kansas. Van Doren *v.* Jiazler, 1 Nev., 380; Fisman *v.* Blood, 2 Kas., 496.

*Labatt & Noble,* for defendant in error

I. Upon its face the instrument evidences that Hirsch intended to bind himself as an indorser, for it purports to have been regularly transferred to him by the payee's indorsement, and by him transferred, by his own indorsement, to the indorsee. And unless he has indicated an intention to become liable as a surety or guarantor, by some expression to that effect, he will be very clearly bound as an indorser, and be entitled to require demand and notice as a condition precedent to his determinate liability. Roberts *v.* Masters, 40 Ind., 463; Vore *v.* Hurst, 13 Ind., 551; Dale *v.* Moffit, 22 Ind., 114; Clapp *v.* Rice, 13 Gray, 403; Moies *v.* Bird, 11 Mass., 436; Howe *v.* Merrill, 5 Cush., 80; Rickey *v.* Dameron, 48 Mo., 61.

GOULD, CHIEF JUSTICE.— On December 22, 1874, Heidenheimer Bros. sued J. Blumenkron, Herman Hirsch and S. Heidenheimer on the following promissory note:

"$1,418.24.                         GALVESTON, June 1, 1873.

"Six months after date I promise to pay to the order of myself fourteen hundred and eighteen $\frac{24}{100}$ dollars, value received, payable at ———

(Signed)                         "J. BLUMENKRON.
"Indorsed:
        "J. BLUMENKRON,
        "HERMAN HIRSCH,
        "S. HEIDENHEIMER."

The petition sought to charge Hirsch and S. Heidenheimer not as indorsers, but as co-obligors with Blumenkron as his sureties. It was alleged and shown that Blumenkron being indebted to Heidenheimer Bros., in order to procure an extension on said indebtedness, exe-

cuted and indorsed the note sued on, and that Hirsch and S. Heidenheimer indorsed it in the order in which their names appear, for the purpose of enabling Blumenkron to secure the extension, the note so indorsed being then delivered to Heidenheimer Bros. by Blumenkron. S. Heidenheimer, who was also a member of the firm of Heidenheimer Bros., testified that he and Hirsch agreed to put their names on the back of the note to secure it. Hirsch testified that Mrs. Blumenkron brought the note to him signed and indorsed by Blumenkron, and that he placed his name on the back of it as indorser for Blumenkron's accommodation, and on the understanding that S. Heidenheimer was also to put his name there. The court charged substantially that Hirsch was only liable as indorser, and as proper diligence to bind him as such had not been exercised, there was a verdict and judgment in his favor, but in favor of plaintiffs against the other defendants.

The suit was also brought to foreclose a mortgage given by Blumenkron to secure the debt on certain furniture. On the trial the defense was made that this furniture was exempt from forced sale, and on that branch of the case there was a verdict in favor of Blumenkron.

The case comes here on a writ of error, and the first question is: Did the court err in withdrawing from the jury the question of Hirsch's liability as joint promisor with Blumenkron?

On the part of plaintiff in error it is claimed that because Hirsch and S. Heidenheimer placed their names on the back of the note before its delivery, and were aware, when they did so, that it was to be delivered to Heidenheimer Bros., that they are bound as joint makers with Blumenkron as his sureties, if such were the intention of the parties, and that the question of intention was one of fact which should have been submitted to the jury.

Reference is made to cases in this court where one not

the payee of a note, putting his name on the back of it at the time of its inception, without any words to express the nature of his undertaking, has been held liable as original promisor or surety, or as indorser, according to the evidence as to the real obligation intended to be assumed at the time of signing.  Cook *v.* Southwick, 9 Tex., 615; Carr's Ex'r *v.* Rowland, 14 Tex., 275; Chandler *v.* Westfall, 30 Tex., 475; Horton *v.* Manning, 37 Tex., 23.

"The ground," says Mr. Daniels, "upon which parol proof of intention or agreement in such cases is admitted is, that the position of the name on the paper is one of ambiguity in itself; that it is not a complete contract, as is the case of an indorsement by the payee, which imports a distinct and certain liability; but rather evidence of authority to write over it the contract that was entered into; and that parol proof merely discloses and brings to light the terms of the unwritten contract that was made between the parties." 1 Dan. on Neg. Inst., sec. 711.

Here the indorsement of Hirsch was as regular and the contract indicated thereby as definite as if the note had been payable to him and then indorsed by him.  On the face of the note as indorsed and delivered to Heidenheimer Bros., Blumenkron was its maker, and Hirsch and Heidenheimer were its indorsers.  The reason for holding Hirsch liable otherwise than as indorser because he became a party to the paper in its inception and for the accommodation of Blumenkron, or for admitting parol evidence as to the intention with which he became a party, must be found elsewhere than in the authority of the cases from this court just referred to.

They who by regular indorsement become parties to commercial paper for the accommodation of another, although they do so at the inception of the instrument and before delivery, occupy a very different position from strangers to the paper writing their names thereon.

But it is claimed that whilst the note is in the hands of the party to whom it was first delivered, evidence may be admitted to show "the circumstances under which it was indorsed, and whether it was accompanied by a transfer in the usual course of business." 1 Dan., sec. 723.

Such evidence may be admissible to show the true relation between indorser and indorsee; as, for example, that the indorsement was for the accommodation of the indorsee; or that first indorser and second indorser were, as between each other, co-sureties, entitled either of them on payment of the note to contribution from the other. To allow such evidence to contradict or vary the contract evidenced between accommodation indorsers and the party to whom the note was first delivered, seems to us violative of principle.

It may be conceded that the authorities are conflicting on the point; but as a question of authority we think that the weight of authority will be found against it. We quote from the text of Parsons on Notes and Bills: "If the note is payable to the maker, or his order, and indorsed by the maker, a person who puts his name on it after the maker, but before delivery to a third party, is liable only as an indorser, and not as a joint maker." 2 Parsons, ch. XI, p. 122, citing Bigelow v. Cotton, 13 Gray,— a volume not accessible at this place. The authorities are, that where a stranger puts his name on a note, with the understanding of all the parties that his indorsement shall be inoperative until the note is indorsed by the payees, he will only be liable as second indorser. Burton v. Housford, 10 West Va., 486; Bey v. Simpson, 22 How., 350.

We are confirmed in our conclusion by a reference to our statute, making parol evidence inadmissible to prove that the indorser "released the owner of any of the aforesaid instruments" (including negotiable instruments) from his obligation to use due diligence to collect the same." 1 Pasch. Dig., art. 226.

A ruling allowing it to be shown by parol that Hirsch was bound, although due diligence had not been exercised to bind him as indorser, would, it seems to us, contravene the spirit of this statute. Although he only became so for the accommodation of another, he is still an indorser, and it is the owner who seeks to show by parol that he is not entitled to the privileges of indorser. The weight of authority seems to be that under the system of commercial law elsewhere, a parol contemporaneous waiver of the right to notice may be shown. Under our statute this cannot be done here; nor do we think it can be shown by parol that the apparent indorser is in fact a guarantor or maker, and thereby contradict the face of the paper, so as to charge the party more onerously than he purports to have bound himself, and effectually to deprive him of his right to be discharged in the absence of due diligence. For the purpose of preventing injustice, equity allows a deed to be shown by parol to have been intended merely as a mortgage. For a like purpose it might admit parol evidence that one apparently liable to be charged as a joint promisor or guarantor, was in truth only liable as indorser. But where the parties have deliberately selected the form of the instrument, executed and accepted, on what principle can a more onerous contract than that instrument imports be imposed on the obligors?

Our conclusion is that the court did not err in its charge that Hirsch was only liable as indorser, and that the judgment in favor of Hirsch be affirmed.

The verdict exempting the mortgaged property as household and kitchen furniture is complained of as against the evidence. The exemption of "all household and kitchen furniture" would not include any other than furniture for the family, such as might be on hand and used by it. Household and kitchen furniture used in hotels and restaurants, beyond that which is used by the family, is not included in the exemption. It is not reasonable that one hundred and sixteen mattresses and

forty-six bedsteads should be exempted for a private family like that shown by the evidence. We think the verdict manifestly wrong, and that for this reason the judgment as to defendant Blumenkron is reversed and the cause remanded. The judgment as to defendant Hirsch is affirmed.

REVERSED AND REMANDED.

[Opinion delivered February 28, 1882.]